J-S40036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JAMES MCFADDEN :
:
Appellant : No. 2617 EDA 2023

Appeal from the Judgment of Sentence Entered September 8, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001977-2015

BEFORE: STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED MARCH 10, 2025**

James McFadden ("McFadden") appeals from the judgment of sentence imposed following his convictions of rape of a child, involuntary deviate sexual intercourse ("IDSI") with a child, unlawful contact with a minor, endangering the welfare of children, corruption of minors, and indecent assault of a person less than thirteen years of age.[1] We affirm.

From approximately 2008 through 2012, McFadden repeatedly raped and sexually abused his daughter, D.Z., who was born in 2001. In 2015, when D.Z. was thirteen years old, she disclosed the abuse to her mother ("Mother"), who took D.Z. to the police station the following day to report McFadden's crimes. After a forensic interview and physical examination of

---

[1] 18 Pa.C.S.A. §§ 3121(c), 3123(b), 6318(a)(1), 4304(a), 6301(a)(1), 3126(a)(7).

D.Z., the Commonwealth charged McFadden with the above-referenced offenses.

This matter proceeded to a jury trial in January 2023.[2] The trial court summarized D.Z.'s testimony at trial:

> At the age of five . . . or six . . . , D.Z., [Mother,] and [McFadden] went to live in Florida with her [paternal] great-uncle . . . . D.Z. feared her father while living there. He was unpredictable, yelled at both D.Z. and [M]other, and on a few occasions became physical. [D.Z.] never saw physical altercations between her parents while in Florida, but heard them, and recalled [M]other would have marks on her arms and neck. D.Z. recalled that [McFadden] would "pretty much beat me. He would grip me up, toss me down and choke me," attacking both her face and body. [N.T., 1/10/23, at 46.] She could not recall if these attacks occurred in front of [M]other or [her great-uncle]. However, her great[-]uncle did inquire afterwards about what happened after seeing D.Z. with a black eye.
>
> D.Z. and her family returned to Philadelphia, moving to a home on Lynford Street. D.Z. recalled that at this residence, the familial dynamic did not much change, except that it "was a little bit more intense" and [McFadden's] anger got worse. [*Id*. at 49.] When she was approximately ten (10) years old, D.Z. recalled [McFadden] referring to her as "a whore, a slut... ['Y]ou're just like your mom['",] whom he would also refer to as a "[whore]." [*Id*. at 50.]
>
> The sexual abuse of D.Z. began at the Lynford Street residence. She remembered [McFadden] "touching me inappropriately," as well as "taking photos of me inappropriately." [*Id*. at 53. McFadden] would dress D.Z. in her school uniform, with her legs propped up and open. D.Z. recalled an incident in her bedroom wherein [McFadden] proceeded to disrobe her and take his pants off and "rub his penis on [her] vagina." [*Id*. at 56.] The sexual abuse continued to occur in the following months, escalating to [McFadden] vaginally penetrating D.Z. with his

---

[2] The trial court declared a mistrial after the jury deadlocked at McFadden's first trial in September 2018.

penis. [McFadden] also anally penetrated D.Z., during which, she would scream and cry. D.Z. recalled being anally raped by [McFadden] over twenty . . . times. [McFadden] would stop the sexual abuse only after ejaculating on or inside D.Z. D.Z. recounted how these incidents of sexual abuse usually happened while [M]other was at work, sometimes occurring multiple times a week. However, D.Z. did recall an incident that occurred when she was either eight . . . or nine . . . years old and [M]other was home at the time. D.Z. was in her parents' room with [McFadden] when [Mother] walked by. [M]other soon walked back, however, and inquired what was going on. At this point in time, [McFadden] had already taken D.Z.'s underwear and pants off. D.Z. responded "[n]othing is going on." [*Id*. at 65.] She explained she gave a false response to [M]other out of fear. Sometime later, [M]other questioned D.Z. again about the bedroom incident outside of [McFadden's] presence. After initially denying anything had happened, D.Z. finally confirmed [M]other's suspicion. In response, [Mother] took D.Z. . . . to a [motel.] Sometime later, after [McFadden] denied sexually abusing D.Z., [Mother] returned to the home with [D.Z.] D.Z. recalled that the physical and sexual abuse at the hands of her father continued.

When D.Z. was between the ages of ten . . . and twelve . . . , the family moved to Aldine Street, also located in . . . Philadelphia. [McFadden] continued to abuse D.Z. at this residence. D.Z. recalled that the [physical] abuse "was more violent," including giving her a "busted lip[." *Id*. at 74-75.] The signs of the physical abuse were witnessed by [M]other this time, including black eyes, busted lips and other facial injuries. [McFadden] at one point threw a piece of wood at D.Z. resulting in her sustaining a concussion.

At the Aldine Street home, [McFadden] continued to use derogatory language towards D.Z., calling her a whore, a slut, "retarded . . . piece of shit." [*Id*. at 76.] Similarly, the vaginal and anal abuse continued, including an incident wherein D.Z.'s vagina bled after being violently penetrated by [McFadden]. D.Z. remembered screaming due to the pain. D.Z. recalled she hid her bloody underwear from [M]other . . . out of fear of what [McFadden] might do if confronted. D.Z. lost track of the number of times [McFadden] sexually abused her at [the] Aldine Street residence.

[In 2012, D.Z. and Mother moved out of the Aldine Street residence after McFadden threatened Mother with a gun, an

incident which D.Z. witnessed.] D.Z. finally disclosed the abuse when she was twelve . . . years old to . . . her childhood boyfriend. In response, [her boyfriend] urged her to tell someone about the abuse. D.Z. also informed a school friend . . . about the abuse. [In 2015, a] few months after disclosing to [her boyfriend], D.Z. wrote a letter to [M]other disclosing the abuse. In her letter, D.Z. informed [M]other that the abuse by [McFadden] had been happening for "at least six or seven years[. I think even] more." [*Id*. at 101.] D.Z. explained to [M]other that she did not reveal the abuse earlier out of fear of what [McFadden] would do, including killing them both.

Upon learning of the abuse, [Mother] took D.Z. to the police. At the station, D.Z. was interviewed. D.Z. was subsequently taken to the Philadelphia Children's Alliance . . . for a forensic interview in which she recounted her sexual and physical abuse at the hands of [McFadden]. When D.Z. underwent an examination, the physician noted cut marks on D.Z.'s wrists. D.Z. admitted she had begun cutting herself due to the abuse she had incurred.

Trial Court Opinion, 1/18/24, at 2-5 (record citations omitted).

Mother testified that McFadden strictly disciplined D.Z. and occasionally physically abused her. Once, McFadden picked D.Z. up by the arm and threw her against a wall. Often when McFadden was mad at D.Z., he would instruct her to go upstairs and discipline her in private. Mother occasionally saw marks on D.Z.'s wrists or face, but D.Z. would often deny that McFadden abused her. Mother believed that her father ("Grandfather") took a photograph of a bruise on D.Z.'s face on one occasion, but Grandfather did not recall taking any such photograph during his testimony.

Mother described the incident that led her to temporarily take D.Z. to a motel when D.Z. was six or seven. Mother explained that she woke up in the middle of the night after hearing noises from D.Z.'s bedroom and saw McFadden lying next to D.Z. in D.Z.'s bed. Mother asked D.Z. the following

day whether "daddy touch[ed]" her, and D.Z. responded in the affirmative. N.T., 1/10/23, at 208. Mother testified that she returned home after two days because (1) D.Z. was not upset and was asking to see her father; (2) McFadden vehemently protested his innocence; and (3) D.Z. also answered "yes" when Mother asked D.Z. "if her friends touched her too." *Id*. at 210.

Mother testified that she left McFadden in 2012 after he threatened to shoot her while drunk. Mother did not initially take D.Z. with her because McFadden would become upset when Mother took D.Z. away from him and Mother believed that only her safety was then in danger. During the ensuing days, Mother communicated her desire to see D.Z. to McFadden, and McFadden responded that Mother could "only see [D.Z.] if [they] can be a family." *Id*. at 220-21.

Mother testified that McFadden also physically abused her on occasion; once in Florida, he struck her in the back of the head, causing her to lose consciousness. Mother generally did not seek medical treatment for herself or D.Z. for the abuse because she did not want to anger McFadden or involve law enforcement. Mother testified that she went to the hospital once for an injury McFadden caused to her back, but she did not recall which hospital. After D.Z. disclosed the sexual abuse in 2015, Mother took her daughter to St. Christopher's Hospital for Children for an examination. The parties stipulated that D.Z.'s physical examination revealed evidence that she had been cutting herself, but the results of the examination were otherwise normal.

Several of McFadden's relatives testified that they had spent time with McFadden, D.Z., and Mother and never saw any signs of abuse. In addition, McFadden presented character witnesses, who testified that he had a reputation in the community for being a peaceful and law-abiding person.

At the charging conference, McFadden requested that the trial court instruct the jury regarding D.Z.'s failure to make a prompt complaint and the Commonwealth's failure to provide hospital records, text messages, and photographs. The court denied both requested instructions. Following the jury charge, McFadden objected to the court's refusal to give the two requested instructions.

The jury convicted McFadden of the above-referenced offenses. The trial court imposed two consecutive terms of ten to twenty years' imprisonment for rape of a child and IDSI with a child, for an aggregate term of twenty to forty years' imprisonment.[3] McFadden filed a timely post-sentence motion, claiming that his sentence was excessive and the verdict was against the weight of the evidence. The trial court denied the motion. McFadden filed a timely notice of appeal. Both he and the trial court have complied with Pa.R.A.P. 1925.

---

[3] The trial court also imposed the following concurrent terms of imprisonment: (1) five to ten years for unlawful contact with a minor; (2) three years and six months to seven years for endangering the welfare of children; (3) three years and six months to seven years for corruption of minors; and (4) three years and six months to seven years for indecent assault of a person less than thirteen years of age.

McFadden presents the following issues for our review:

1. Did the trial court err by refusing to instruct the jury according to the Pennsylvania Suggested [Standard] Criminal Jury Instruction concerning the complainant's failure to make a prompt complaint to authorities?

2. Did the trial court erroneously deny [McFadden's] request that the jury be charged with Pennsylvania [Suggested] Standard Criminal Jury Instruction 3.21B, Failure to Produce Documents or Other Tangible Evidence at Trial?

3. Were the verdicts against the weight of the evidence?

4. Was the sentence excessive?

McFadden's Brief at 7.

In his first issue, McFadden challenges the trial court's denial of his request for a jury instruction concerning D.Z.'s alleged failure to make a prompt complaint to authorities.

"[O]ur standard of review when considering the denial of jury instructions is one of deference — an appellate court will reverse a [trial] court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Green*, 273 A.3d 1080, 1084 (Pa. Super. 2022) (citation omitted)

> [A] jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the [defendant] was prejudiced by that refusal.

*Commonwealth v. Becker*, 192 A.3d 106, 118 (Pa. Super. 2018) (citation

omitted).

> The premise for the prompt complaint instruction is that a victim of a sexual assault would reveal at the first available opportunity that an assault occurred. The instruction permits a jury to call into question a complainant's credibility when he or she did not complain at the first available opportunity. However, there is no policy in our jurisprudence that the instruction be given in every case.

> The propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a subjective standard based upon the age and condition of the victim. For instance, where an assault is of such a nature that the minor victim may not have appreciated the offensive nature of the conduct, the lack of a prompt complaint would not necessarily justify an inference of fabrication.

> \* \* \* \*

> The prompt complaint instruction provides, in pertinent part, that evidence of delay in making a complaint does not necessarily make the victim's testimony unreliable, but may remove from it the assurance of reliability accompanying the prompt complaint or outcry that the victim of a [sexual offense] would ordinarily be expected to make. The instruction further states that the failure to promptly complain and the victim's explanation for the failure are factors bearing on the believability of the victim's testimony and must be considered by [the jury] in light of all the evidence in the case.

*Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013)

(citations, quotations marks, and brackets omitted).[4]

---

[4] McFadden requested that the trial court provide Pennsylvania Suggested Standard Criminal Jury Instruction 4.13A, "Failure to Make Prompt Complaint in Certain Sexual Offenses." Subsequent to the filing of the trial court opinion and McFadden's brief in this appeal, the Criminal Jury Instructions Subcommittee published a revised edition of the suggested instructions,
*(Footnote Continued Next Page)*

McFadden argues that the trial court abused its discretion in not issuing a prompt complaint jury instruction where D.Z. understood that McFadden's behavior was wrong long before she disclosed it to Mother at age thirteen. As evidence of D.Z.'s awareness of the nature of his conduct, McFadden cites her testimony that she screamed, cried, and otherwise resisted her father's attempts to anally and vaginally rape her. McFadden avers that his position of authority over D.Z. does not explain her delay in disclosing the sexual abuse when Mother and D.Z. moved out in 2012, more than two years before D.Z. disclosed the abuse in 2015. He asserts that he sustained prejudiced by the

_____

**removing** Instruction 4.13A. The subcommittee indicated that it deleted the prompt complaint "instruction and no longer recommends its use because [it] is incompatible with 18 Pa.C.S.[A.] § 3106, which provides in relevant part, 'No instructions shall be given cautioning the jury to view the complainant's testimony in any other way than that in which all complainants' testimony is viewed.'" Pa. SSJI (Crim), § 4.13A (4th ed. 2024), *subcommittee note*.

The parties do not address the post-trial removal of the prompt complaint instruction from the suggested standard jury instructions. The suggested instructions are non-binding, and therefore we do not view the subcommittee's decision to omit the prompt complaint instruction or its interpretation of 18 Pa.C.S.A. § 3106 as binding on the courts of this Commonwealth. **See Commonwealth v. Eichinger**, 108 A.3d 821, 845 (Pa. 2014) (providing that the suggested instructions are not binding and intended only as "guides" for trial courts in crafting jury instructions). We continue to follow our controlling precedent, which holds that courts must provide the prompt complaint instruction in certain sexual assault cases where there has been a delay in reporting. **See, e.g.**, **Commonwealth v. Snoke**, 580 A.2d 295, 298 (Pa. 1990) (stating, "where the actual occurrence of the [sexual] assault is at issue in the case, the trial judge is required to charge the jury as to the relevance of a delay in disclosure and the significance of a prompt complaint"); **Sandusky**, 77 A.3d at 668 (holding that trial court erred in concluding that prompt complaint was inapplicable to child victims of sexual abuse and that trial courts must assess whether to give the instruction on a case-by-case basis).

absence of a prompt complaint instruction as the case hinged on "the testimony of a highly impressionable young girl with conflicting loyalties and mixed motives." McFadden's Brief at 37.

In its opinion, the trial court stated that two factors supported its decision to deny McFadden's request for a prompt complaint instruction: (1) D.Z. was approximately six or seven years old when the abuse started, and there was no evidence that she fully comprehended the nature of the abuse before deciding to come forward; and (2) McFadden was in a position of authority over D.Z., subjecting her to physical abuse that limited her pathways to expose the abuse. The court stated that even if it erred in not giving the requested instruction, the error was harmless as the court comprehensively instructed the jury on how to evaluate the credibility of witnesses.

Based on our review, we find that the trial court did not err or abuse its discretion by not giving the prompt complaint instruction. **See Green**, 273 A.3d at 1084. First, we note that D.Z. did promptly report the abuse when she told Mother that McFadden was touching her when she was seven or eight. The fact that Mother soon reunited with McFadden and the sexual abuse resumed could partially explain D.Z.'s delay in coming forward again.

Second, the record supports the court's conclusion that D.Z. did not fully appreciate the offensive nature of her father's conduct until she decided to inform Mother what had transpired. **See Sandusky**, 77 A.3d at 667. D.Z. testified:

- 10 -

I just remember getting older and that — I believe that it was more than an awakening. I had just realized that this was not normal and having this feeling. And I started being aware of the situation and I realized that not every dad had done this to them.

N.T., 1/10/23, at 98; *see also id*. at 103-04 (D.Z. testifying that after discussions with her friends she finally realized McFadden's conduct was "not actually . . . okay").

Finally, D.Z. testified repeatedly at trial that she feared McFadden based on the physical abuse he perpetrated, even citing her concern that her father would "try[] to kill me and you" in her letter to Mother disclosing the abuse. *Id*. at 101. While McFadden stresses that he and Mother separated in 2012 and D.Z. lived primarily with Mother after that date, the testimony reflects that D.Z. spent considerable time with her father after the separation pursuant to an informal custody arrangement.

Accordingly, we conclude that the trial court acted within its discretion when it denied McFadden's request for a prompt complaint instruction. *See Commonwealth v. Williams*, 274 A.3d 722, 737 (Pa. Super. 2022) (affirming denial of prompt complaint instruction where ten-year old victim delayed reporting sexual abuse for months, stating, "where some evidence favored a prompt complaint instruction and some did not, it fell within the court's discretion to deny this instruction"). Furthermore, even assuming the trial court should have provided the prompt complaint instruction, the court negated any prejudice to McFadden by thoroughly instructing the jury on how to assess the credibility of witnesses and resolve conflicts in the testimony.

*See* N.T., 1/30/23, at 130-34; *see also Sandusky*, 77 A.3d at 668-69 (concluding that, although trial court erred in denying request for prompt complaint instruction, issuance of standard credibility instruction "provided the jury with a sufficient framework to question the victims' credibility," ensuring there was no prejudice to appellant). No relief is due on McFadden's first issue.

In his next issue, McFadden challenges the trial court's denial of his request for the standard criminal jury instruction on missing evidence.

The jury instruction McFadden requested, Pennsylvania Suggested Standard Criminal Jury Instruction 3.21(B), states:

> If three factors are present, and there is no satisfactory explanation for a party's failure to produce an item, the jury is allowed to draw a common-sense inference that the item would have been evidence unfavorable to that party. The three necessary factors are:
>
> > *First*, that the item is available to that party and not to the other;
> >
> > *Second*, that it appears the item contains or shows special information material to the issue; and
> >
> > *Third*, that the item would not be merely cumulative evidence.

Pa. SSJI (Crim), § 3.21B (4th ed. 2024) (emphasis in original); *see also Commonwealth v. Miller*, 172 A.3d 632, 645 (Pa. Super. 2017) (applying nearly identical standard to request for missing witness instruction).

A missing evidence instruction is appropriate "[w]here evidence which would properly be part of a case is within the control of the party in whose

interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so." *Clark v. Philadelphia College of Osteopathic Medicine*, 693 A.2d 202, 204 (Pa. Super. 1997) (citation omitted). If the evidence at issue "is equally available to both parties," the trial court shall not provide a missing evidence instruction. *Miller*, 172 A.3d at 646 (citation omitted).

McFadden argues that the trial court should have provided the missing evidence instruction based upon the Commonwealth's failure to produce: (1) medical records associated with D.Z.'s February 2015 visit to St. Christopher's Hospital for Children; (2) text messages where McFadden threatened Mother that she would not be able to see D.Z. unless they became a family again; and (3) photographs showing injuries to D.Z.'s face taken by Grandfather. McFadden contends that trial testimony demonstrated that each of these items of evidence existed and were exclusively in Mother's possession.

McFadden asserts that he sustained prejudice from the withholding of the evidentiary items where each of them could have contained content unfavorable to the Commonwealth:

> If the text [messages], once produced, demonstrated that [McFadden] did not threaten to interfere with [Mother's] parental rights, then the prosecution's case would be weakened. If the medical records were to show that D.Z.'s hymen was intact and that she had never engaged in vaginal sexual intercourse, then the prosecution's case would be further impaired. If the photographs purporting to show D.Z.'s injuries depicted crudely fabricated bruises and simulated lacerations, the prosecution's case would be further damaged.

McFadden's Brief at 42.

The trial court determined that McFadden failed to meet the first requirement for the missing evidence instruction, as he did not show that the missing items were in the Commonwealth's sole possession. Specifically, the court observed that (1) Mother did not recall the hospital that she visited, and did not have any records to turn over; (2) McFadden had equal access to his text messages with Mother; and (3) Mother only believed that her father took the photographs at issue, and Grandfather's testimony failed to substantiate that he was the photographer. The court concluded that its general credibility instruction was sufficient to inform the jury of its role in assessing the alleged missing evidence. The court further reasoned McFadden's cross-examination of the relevant witnesses gave the jury sufficient information to call into question whether the contested evidence even existed.

Based on our review, we conclude that the trial court did not abuse its discretion or commit an error of law in not providing the missing evidence instruction. **See Green**, 273 A.3d at 1084. First, McFadden has waived his claim with respect to the hospital records, as his argument on appeal relates to a different hospital visit than the basis of his objection below. At the charging conference, McFadden requested the missing evidence instruction related to **Mother's** hospital records, which he claimed to not be able to obtain through a subpoena because he did not know the name of the hospital. **See** N.T., 1/12/23, at 21-22. The trial court fairly understood this to be a reference to Mother's testimony that she visited a hospital when McFadden injured her

back early in the relationship, but she did not remember the name of the hospital or have any records associated with the visit.  *See* N.T., 1/11/23, at 21-22.  On appeal, McFadden now argues that he never received records associated with **D.Z.'s** visit to St. Christopher's Hospital.  McFadden cannot pursue an appellate claim on a different basis than what he sought relief on before the trial court.  *See* Pa.R.A.P. 302(a) (providing, "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal"); **Commonwealth v. Truong**, 36 A.3d 592, 598-99 (Pa. Super. 2012) (*en banc*) (stating that a party may not pursue a different legal theory on appeal than what he raised in the trial court).[5]

Second, with respect to the alleged text messages between Mother and McFadden, Mother testified that she engaged in "communication" with McFadden in the days after she moved out in which "he said [that she] can only see [D.Z.] if [they] can be a family."  N.T., 1/10/23, at 220-21.  McFadden's testimony gives no indication that this conversation took place through text messages or some other written format, rather than a telephone call.  Even if the communication took place via text messages or some other

_____

[5] Even if not waived, we would find no merit to McFadden's argument with respect to the St. Christopher's Hospital records for two reasons.  First, the fact that McFadden stipulated to the results of D.Z.'s physical examination at St. Christopher's calls into question whether McFadden lacked access to the medical records and undermines any claim that the missing records could contain unfavorable evidence.  *See* N.T., 1/11/23, at 95.  Second, McFadden has not shown that the St. Christopher's Hospital records were uniquely within the control of the Commonwealth, and that he could not obtain them with a subpoena.  *See Miller*, 172 A.3d at 646.

tangible format, there is nothing to demonstrate that Mother retained the messages or that she had any greater access to the messages than McFadden, who was also a party to the conversation. **See Miller**, 172 A.3d at 646.

Finally, McFadden cites nothing in the record indicating that the Commonwealth was in possession of a photograph showing injuries to D.Z.'s face. Mother testified she saw a photograph once that she believed Grandfather had taken to document the physical abuse to D.Z., but Mother did not have the photograph at the time of her testimony. **See** N.T., 1/11/23, at 25-28. Grandfather testified that he did not recall taking a photograph of D.Z.'s injuries, and he thought he "would remember something like that." N.T., 1/10/23, at 241. Therefore, the record is ambiguous as to whether the photograph even existed and does not demonstrate that the Commonwealth failed to produce it to McFadden.

Because McFadden has not shown that the Commonwealth was in possession of material evidence that it failed to produce, he did not demonstrate his entitlement to a missing evidence jury instruction. **See Clark**, 693 A.2d at 204. Thus, his second issue merits no relief.

In his third issue, McFadden argues that the trial court abused its discretion in denying his claim that the verdict was against the weight of the evidence.

We review a weight-of-the-evidence challenge according to the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the

credibility of witnesses." ***Commonwealth v. Clemens***, 242 A.3d 659, 667 (Pa. Super. 2020) (citation omitted). For an appellant to prevail on a challenge to the weight of the evidence, the evidence must be "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Delmonico***, 251 A.3d 829, 837 (Pa. Super. 2021) (citation omitted).

"Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence." ***Id***.

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Wright***, 314 A.3d 515, 524 (Pa. Super. 2024) (citation omitted).

McFadden argues that the verdict was against the weight of the evidence, where the Commonwealth relied on D.Z.'s and Mother's testimony regarding McFadden's physical and sexual abuse and did not produce any witnesses, medical reports, police reports, or photographs to corroborate the abuse. He asserts that D.Z.'s trial testimony, that McFadden forced her to

perform oral sex, contradicted the fact that she never mentioned that sex act in her police statement or at prior hearings. McFadden further contends that Mother's testimony, that she took D.Z. to a motel after D.Z. disclosed that McFadden inappropriately touched her only to return home two days later, was non-sensical. McFadden argues that the witnesses he presented — including multiple witnesses who testified that they had never seen any indicia of physical abuse and who vouched for his peaceful and law-abiding reputation — outweighed the Commonwealth's case to such a degree that the trial court should have granted a new trial.

The trial court rejected McFadden's weight-of-the-evidence claim, reasoning as follows:

> [T]he testimony of a victim of sexual assault, if believed beyond a reasonable doubt by the fact finder, is on its own enough evidence to sustain a conviction. Thus, the evidence presented by the Commonwealth did contain all the weight needed to satisfy its burden: the testimony of D.Z. herself. As instructed by the [t]rial [c]ourt, the jury was informed that they had no obligation to believe D.Z. and therefore were not required to convict on her testimony alone. The jury was therefore free to weigh her testimony and that of all the other witnesses. Additionally, [McFadden's] assertion that the government was required to produce physical evidence corroborating the victim's testimony plainly contradicts the law. Thus, the weight of the evidence was more than adequate to sustain a guilty verdict . . . .

Trial Court Opinion, 1/18/24, at 19-20.

Upon review, we discern no abuse of discretion by the trial court in rejecting Haines' weight claim. *See Delmonico*, 251 A.3d at 837. As the trial court observed, "[t]his Court has long[ ]recognized that the

uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses." ***Commonwealth v. Diaz***, 152 A.3d 1040, 1047 (Pa. Super. 2016) (citation omitted). Therefore, "the lack of corroborating physical evidence does not undermine" D.Z.'s testimony that the sexual assault occurred. ***Id***.

To the extent McFadden contends that D.Z. contradicted herself when she stated that her father forced her to perform oral sex on him, we disagree, as D.Z. consistently mentioned this abuse throughout the case. ***See*** N.T., 1/10/23, at 173-74 (D.Z. reviewing her forensic interview statement and testimony at preliminary hearing and first trial where she stated that McFadden forced her to perform oral sex). In any event, slight inconsistencies in a child victim's account of sexual assault "do not rise to the level of 'shocking the conscience of the court,'" where the victim provides a generally consistent account of the abuse. ***Commonwealth v. Fuentes***, 272 A.3d 511, 519 (Pa. Super. 2022) (holding that slight disparities between child victim's account of sexual assault during forensic interview and trial testimony did not warrant overturning trial court's finding that verdict was not against the weight of the evidence given the victim's age at time incidents occurred and amount of time that had passed between events and trial).

The jury had the exclusive province to believe all, part, or none of the evidence presented, and to make credibility determinations regarding the testimony at trial. ***See Clemens***, 242 A.3d at 667. Because the trial court

had the opportunity to hear and see the evidence presented, this Court gives the gravest consideration to the findings and reasons advanced by the court when reviewing its determination regarding the weight of the evidence. *See Wright*, 314 A.3d at 524. We decline to disturb the court's determination that the verdict did not shock its sense of justice. Accordingly, no relief is due on McFadden's third issue.

In his final issue, McFadden challenges the discretionary aspects of his sentence. Challenges to the discretionary aspects of a sentence are not appealable as of right. *See Commonwealth v. Akhmedov*, 216 A.3d 307, 328 (Pa. Super. 2019) (*en banc*).

> Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth "a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence;" and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id*. (citation and brackets omitted).

In the instant case, McFadden filed a timely post-sentence motion, a timely notice of appeal, and included a Rule 2119(f) statement in his brief. We therefore must examine the Rule 2119(f) statement to determine whether he has raised a substantial question meriting our review. *See id*. A substantial question is present where the appellant advances an argument that the sentence was inconsistent with a specific provision of the Sentencing

- 20 -

Code or contrary to the fundamental norms underlying the sentencing process. **See id**. "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." **Id.** (citation omitted).

In his Rule 2119(f) statement, McFadden asserts that: (1) the trial court failed to place sufficient reasons on the record to support his sentence; and (2) the court did not consider any mitigating factors. McFadden's first issue raises a substantial question.[6] **See Commonwealth v. Proctor**, 156 A.3d 261, 273 (Pa. Super. 2017) (providing that the failure to set forth adequate reasons for the sentence imposed raises a substantial question). However, we conclude that he has not raised a substantial question with respect to his second issue. "[T]his Court repeatedly has held that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." **Commonwealth v. Crawford**, 257 A.3d 75, 79 (Pa. Super. 2021) (citation and brackets omitted); **accord Commonwealth v. Radecki**, 180 A.3d 441, 469 (Pa. Super. 2018).

_____

[6] McFadden also asserts in his Rule 2119(f) statement that his aggregate sentence was "the result of prejudice." McFadden's Brief at 49. However, as he does not present an issue of trial court prejudice in the argument section of his brief, we need not address whether he would have raised a substantial question as to this issue.

Therefore, we will only address McFadden's challenge to the trial court's alleged failure to place sufficient reasons for his sentence on the record. We consider the standard of review for a discretionary sentencing claim:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Taylor*, 277 A.3d 577, 592-93 (Pa. Super. 2022) (citation omitted).

> Section 9721(b) of the Sentencing Code[7] provides:
>
> [T]he sentence imposed should call for total confinement that is consistent with ... the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing. ...

42 Pa.C.S.A. § 9721(b)

> The balancing of the sentencing factors is the sole province of the sentencing court. Further, we recognize that the sentencing court, which is present at the hearing and observes all witnesses and the defendant firsthand, is in a superior position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime. Notably, where a sentencing court is informed by a [pre-sentence investigation report ("PSI")], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed.

_____

[7] 42 Pa.C.S.A. §§ 9701-9799.75.

> In every case in which the court imposes a sentence for a felony or a misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the PSI; thus properly considering and weighing all relevant factors.

*Commonwealth v. Miller*, 275 A.3d 530, 535 (Pa. Super. 2022) (citations, quotations marks, and brackets omitted).

McFadden argues that the trial court failed to place on the record sufficient reasons for its decision to impose consecutive ten-to-twenty-year sentences for rape of a child and IDSI with a child. He contends that the court did not address the sentencing factors of Section 9721(b) or refer to his lack of a prior criminal record and other personal characteristics. McFadden asserts that the only factor the court considered, his failure to admit wrongdoing, was not a sufficient ground for doubling his sentence.

In its opinion, the trial court stated that it properly considered the gravity of the offense, the lasting impact of the crimes on D.Z., the need to protect children in the community, and McFadden's potential for rehabilitation. The court determined that a review of these factors, as well as McFadden's refusal to show remorse for his actions, justified the aggregate sentence that the court imposed. To the extent McFadden argues that the court ignored his lack of a prior record, the court noted that his prior record score was already a factor in the guideline recommendation, and therefore McFadden is effectively asking for double mitigation.

Upon review, we conclude that the trial court did not abuse its discretion when imposing its sentence. *See Taylor*, 277 A.3d at 592-93. At sentencing, the court noted that it reviewed the PSI, the Commonwealth's sentencing memorandum, the sentencing guidelines, and letters of support for McFadden. *See* N.T., 9/8/23, at 80-81. The court also considered argument from counsel, victim impact testimony from D.Z. and Mother, testimony from multiple defense witnesses, and McFadden's allocution. *See id*. at 104-10, 122-35.

When imposing the sentence, the trial court recognized the severity of McFadden's crimes and the need to protect the children of the community from him. *See id*. at 136-38. The court expressed concern for D.Z.'s self-harm, noting that children "cut themselves because something horrible has happened to them." *Id*. at 135-36. The court noted that McFadden had never expressed remorse for his conduct throughout the proceedings. *See id*. at 135-37. Finally, the court stated that it was ordering McFadden's two lead sentences for rape of a child and IDSI with a child to run consecutively based on the multiple instances of abuse and the need to protect the community. *See id*. at 138.

As noted above, it was solely within the province of the trial court to weigh the evidence and balance the sentencing factors. *See Miller*, 275 A.3d at 535. The court clearly stated the rationale for its sentence on the record, and the court's review of the PSI reflects that it was aware of all relevant factors concerning McFadden. *See id*. The court's decision to run the

sentences for rape of a child and IDSI with a child consecutively was not an abuse of discretion, particularly where McFadden abused D.Z. numerous times over many years. **See Commonwealth v. Zirkle**, 107 A.3d 127, 133 (Pa. Super. 2014) (stating that the decision to impose consecutive rather than concurrent sentences falls within the sound discretion of the trial court). The sentences imposed on the two lead counts fell well within the standard guideline range.[8] Therefore, we conclude that the twenty-to-forty-year aggregate sentence imposed by the trial court was not manifestly unreasonable. **See Miller**, 275 A.3d at 535. Accordingly, McFadden's final issue merits no relief.

Having found no merit to any of McFadden's appellate issues, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/10/2025

---

[8] The guidelines provided for standard range sentences of seventy-two months to the statutory maximum for rape of a child and IDSI with a child. **See** N.T., 9/8/23, at 80-81 (stating sentencing guideline recommendation). The statutory maximum sentence for both rape of a child and IDSI with a child is forty years. **See** 18 Pa.C.S.A. §§ 3121(e)(1), 3123(d)(1). Therefore, the trial court could have imposed standard-range sentences of twenty to forty years at each of the rape and IDSI counts.